ARTHUR C. RUGE AND FLORENCE B. RUGE, PETITIONERS, *v.* COMMIS-
SIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 52103.    Filed April 24, 1956.

*Edward C. Thayer, Esq.*, for the petitioners.
*Paul J. Henry, Esq.*, for the respondent.

OPINION.

KERN, *Judge:* The sole question before this Court is whether pay-ments under an agreement between Baldwin and Ruge constituted ordinary income or capital gains. The petitioners claim that this agreement dated June 14, 1944, was an agreement for the sale of inventions and patents only, and that all the amounts in question here were the payments in consideration of that sale and are taxable as long-term capital gains under section 117 of the Internal Revenue Code of 1939. *Edward C. Myers*, 6 T. C. 258, and *Commissioner* v. *Hopkinson*, 126 F. 2d 406, are cited to us by the petitioners as controlling on the proposition that the agreement here constituted a sale. In the deficiency notice the respondent determined that the payments in question here were "deemed to be royalty income and recommendation [was therein] made that such payments be returned as ordinary income for the current year, in the nature of royalty payments." In his opening statement at the hearing herein respondent's counsel explicitly stated his further contention that the agreement was a contract for Ruge's personal services, and that the payments in dispute were compensation for services and taxable as ordinary income under section 22 (a) of the Internal Revenue Code of 1939. In his brief counsel for respondent for the first time advanced a third theory of why the payments were taxable as ordinary income. He argued that if there were sales of patents by the agreement, the transaction was a sale of property held for sale in the ordinary course of business by a professional inventor.

We first consider the question of whether the June 14, 1944, agreement accomplished a sale or a licensing of Ruge's inventions to Baldwin. It is well established that an assignment of the exclusive right to manufacture, use, and sell a patented article amounts to a sale of the patent rights and that the consideration therefore is taxable as long-term capital gain provided that (1) the invention is a capital asset in the hands of the inventor, and (2) that it was held by the grantor for the required period. And it makes no difference whether payment is made in a lump sum or over a period of time in amounts based on the use or sale of the invention by the grantee. *Vincent A. Marco*, 25 T. C. 544; *Edward C. Myers, supra; Commissioner* v. *Hopkinson, supra; Waterman* v. *Mackenzie*, 138 U. S. 252. In *Waterman* v. *Mackenzie, supra*, the Supreme Court held that if anything less than the exclusive right to manufacture, use, and sell was transferred, then there was only a license and not a sale. Here Ruge "assigned to Baldwin his entire right, title, and interest" in his invention. We have held before that a transfer in these words constituted a sale within section 117. *Halsey W. Taylor*, 16 T. C. 376; *Carl G. Dreymann*, 11 T. C. 153.

Nevertheless, the Commissioner contends that Ruge retained several important incidents of ownership which are inconsistent with an assignment of patent rights and that, therefore, the agreement was merely a licensing arrangement. By the 1944 agreement Ruge and deForest retained "the exclusive rights in and to such inventions or suggestions for fields outside of the field of strain responsive application and apparatus" and also "the right to consult for others than Baldwin and to use, but not to sell, loan, or otherwise dispose of for use by others, apparatus embodying any Ruge-deForest inventions for their own personal use in their consulting work."

However, the first-quoted retention of rights applied only to inventions which might be made by Ruge subsequent to 1944 under the provisions of paragraph 6 of the agreement, and did not refer to the inventions and patents sold and assigned to Baldwin by the 1944 agreement, and consequently did not affect the completeness of their assignment. The second quoted retention of rights is minor in character and should be considered as a license back not detracting from the validity of the sale of the inventions. See *Lamar* v. *Granger*, 99 F. Supp. 17. We see nothing in either of the reservations by Ruge that would prevent the conclusion that there was a sale to Baldwin of Ruge's right, title, and interest in the inventions covered by paragraph 2 of the assignment of 1944. The agreement by its terms contemplates a sale and we agree that it is such. *Evans* v. *Kavanagh*, (E. D., Mich.) 86 F. Supp. 535, affd. (C. A. 6, 1951) 188 F. 2d 234.

In his opening statement counsel for respondent contended for the first time that these payments were in part compensation for Ruge's personal services. While there were no amended pleadings, counsel for petitioners neither objected nor claimed surprise at the hearing when the trial proceeded on the assumption that this was an issue. On the contrary, he dealt with this question in his brief as though it were in issue. In view of these circumstances, we are of the opinion that this question is before the Court, and that the payments received by Ruge under paragraph 6 of the agreement constituted compensation for personal services and are thus taxable to him as ordinary income.

In *Kimble Glass Co.*, 9 T. C. 183, an inventor was required to further develop his inventions in the field covered by the sale agreement, to disclose to the buyer any inventions made by him and covered by the agreement, to use his best efforts to keep the buyer informed as to any developments in the corresponding field by others, and to submit any propositions he might obtain for sale or licensing of such inventions in the United States or Canada. We held that such an agreement called for the inventor's personal services and that a portion of the consideration paid was compensation for personal services.

In the instant case we are of the opinion that the services called for by paragraph 6 of the agreement of 1944 are similar to those held to be personal services in *Kimble Glass Co.*, *supra*, and that the compensation paid therefor, the "additional two percent" provided for in that paragraph, constitutes ordinary income.

However, we agree with petitioner that the 5 per cent payments called for under paragraph 4 of the agreement constitute consideration paid for the sale of the inventions and patents owned by Ruge in 1944, and are, therefore, to be considered as capital gains. The consulting services of Ruge and deForest referred to in that paragraph were ancillary and subsidiary to the assignments of the inventions accomplished by paragraph 2 of the agreement, and are of the type and kind usually called for to implement the sale of highly technical and intricate inventions.

To recapitulate, we hold that the payments to Ruge during the taxable years under the agreement of 1944 were neither all capital gain nor all compensation for personal services, but that the payments made to him under paragraph 6 of the agreement were for personal services, and the payments of 5 per cent under paragraph 4 constituted consideration for the sale to Baldwin of the inventions referred to in paragraph 2, and are, therefore, taxable as capital gains.

Even if we could properly consider the contention made by respondent's counsel for the first time on brief to the effect that if the agreement of 1944 accomplished sales of inventions the remuneration, therefore, constituted ordinary income, since Ruge was in the business of making and selling inventions, we would conclude that this contention was without merit. The record indicates that in 1944 Ruge was not engaged in the business of making and selling inventions and, consequently, the respondent's contention is without validity with reference to the inventions transferred by paragraph 2 of the agreement for which payments were made to him under paragraph 4. With regard to the payments made to him under paragraph 6, we have already concluded that these constituted ordinary income, and it, therefore, becomes moot whether as to inventions made and transferred subsequent to 1944 pursuant to paragraph 6 Ruge was engaged in the business of making and selling inventions.

*Decision will be entered under Rule 50.*