PER CURIAM:
On July 1, 2013, this Court certified the following question to the Supreme Court of Florida:
WHEN A LICENSEE ENTERS INTO A CONTRACT TO TRANSFER ALL OF ITS INTERESTS IN A LICENSE AGREEMENT FOR AN ENTIRE TERM OF A LICENSE AGREEMENT, SAVE ONE DAY, BUT REMAINS LIABLE TO THE LICENSOR UNDER THE LICENSE AGREE *701 MENT, IS THE CONTRACT AN ASSIGNMENT OF THE LICENSE AGREEMENT, OR IS THE CONTRACT A SUBLICENSE?
MDS (Canada) Inc. v. Rad Source Techs., Inc., 720 F.3d 883 (11th Cir.2013). The Supreme Court of Florida rephrased the question:
DOES FLORIDA RECOGNIZE A “BRIGHT-LINE RULE” TO DISTINGUISH AN ASSIGNMENT OF A LICENSE AGREEMENT FROM A SUBLICENSE?
MDS (Canada) Inc. v. Rad Source Techs., Inc., 143 So.3d 881 (Fla.2014). The Court rejected the use of a bright-line rule to determine whether a license agreement was an assignment or a sublicense, held that cases relied upon by the Appellants[1] which involved the transfer of interests in real property did not readily translate to the instant case which involves a transfer of rights in a patent license agreement, and instead concluded that cases construing patents “are instructive in providing guiding principles for the type of interest at the heart of this case.” Id. at 882. The Court provided comprehensive guidance on what factors should be considered, but left the application of those factors and the ultimate resolution of the issue to this court.
Thus, in order to decide whether the transfer from Nordion to Best was an assignment or a sublicense, we apply the factors set forth by the Supreme Court of Florida. That Court held that “the key factor in distinguishing between an assignment and a sublicense is the intention of the parties, as set forth in the original license agreement.” 143 So.3d at 890. The original License Agreement between Rad Source and Nordion required the consent of Rad Source for Nordion to assign its interest, but did not require consent for Nordion to grant a sublicense. In this case, Nordion transferred to Best all of its interests in the License Agreement for the entire term thereof, save one day. Because the License Agreement expired simultaneously with the expiration of the last patent subject to the License Agreement, Nordion likewise transferred to Best the entirety of its interests in the patents, again save only one day. Especially in light of the fact that Nordion’s agreement with Best provided that it would leave the blood irradiation business entirely, Nor-dion would lack the ability to use even the one retained day. We conclude that the retention by Nordion of a single day at the end of the License Agreement was an inconsequential term. The district court found as follows with respect to the intent of the parties:
[I]t is apparent that the parties did not intend that the sublicensing rights — in relation to the assignment clause — permit a situation where the License Agreement could be assigned by a sublicense if a party reasonably withheld consent to the assignment. Elsewise, the right of consent to assignment would effectively be written out of the License Agreement.
MDS (Canada), Inc. v. Rad Source Techs., Inc., 822 F.Supp.2d 1263, 1310-11 (S.D.Fla.2011). We agree with the district court that Rad Source and Nordion, the parties to the original' License Agreement, never intended that Nordion could transfer its entire interests in the License Agreement, saving only one day, and thus circumvent the contractual requirement that required the consent of Rad Source to an assignment. We conclude that the key factor of the intention of the- parties points strongly to the conclusion that the transfer *702 by Nordion to Best was an assignment, not a sublicense.
As noted above, the Supreme Court of Florida also held that the federal cases construing patents are instructive on the issue at bar. The Court expressly referenced Aspex Eyewear, Inc. v. Miracle Optics, Inc., 434 F.3d 1336 (Fed.Cir.2006). In that case, the Federal Circuit held that:
[A]n exclusive license may be tantamount to an assignment for purposes of creating standing if it conveys to the licensee all substantial rights to the patent at issue. Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A., 944 F.2d 870, 875 (Fed.Cir.1991); see also Waterman v. Mackenzie, 138 U.S. 252, 256, 11 S.Ct. 334, 34 L.Ed. 923 (1891) (“Whether a transfer of a particular right or interest under a patent is an assignment or a license does not depend upon the name by which it calls itself, but upon the legal effect of its provisions.”). To determine whether an agreement to transfer rights to a patent at issue amounts to an assignment or a license, we must ascertain the intention of the parties and examine the substance of what was granted. Vaupel, 944 F.2d at 874 (explaining that the court must examine whether the agreements transferred all substantial rights to the patent at issue and whether the surrounding circumstances indicated an intent to do so).
Id. at 1340. As noted above, the last of the patents subject to the License Agreement expired simultaneously with the expiration of the License Agreement. Thus, Nordion transferred to Best the entirety of its interests in the patents, save only one day. As noted above, that retention was inconsequential. Thus, we conclude that Nordion transferred to Best all of its substantial rights to the patents. This factor also points strongly to the conclusion that the transfer from Nordion to Best was an assignment, not a sublicense.
The Supreme Court of Florida also held that a significant factor in the analysis was the substance of the transaction between Nordion and Best. The Court embraced the reasoning of Waterman v. Mackenzie, 138 U.S. 252, 256, 11 S.Ct. 334, 34 L.Ed. 923 (1891), and noted that “the United States Supreme Court long ago recognized in the patent context that ‘[wjhether a transfer of a particular right or interest under a patent is an assignment or a license does not depend upon the name by which it calls itself, but upon the legal effect of its provisions.’ ” 143 So.3d at 889 (quoting Waterman, 138 U.S. at 256, 11 S.Ct. at 335). Thus, the Florida Supreme Court held: “It is clear that this intent [of Rad Source and Nordion in the original License Agreement] cannot be circumvented simply by labeling the transfer a ‘subli-cense agreement.’ ” The name of the agreement is not determinative under “sublicense” label affixed by Nordion and Best to their transaction. Rather, we look to the substance thereof. As noted above, Nordion transferred to Best all of its substantial interests in the License Agreement and all of its substantial interests in the patents, saving only one day. That single day was inconsequential, and cannot suffice to transform the character of the transaction from an assignment to a subli-cense. We conclude that the substance of the transfer from Nordion to Best was an assignment, not a sublicense.
The Supreme Court of Florida mentioned two factors which might, in other cases, point toward characterization as a sublicense. First, it is true that Nordion remained liable to Rad Source under to the License Agreement. However, as the Supreme Court of Florida noted, Nordion had no legal ability to divest itself of that liability in the absence of consent from *703 Rad Source. Thus, as the Florida Supreme Court noted, Nordion did the next best thing — i.e., it obtained a full indemnification from Best. 143 So.3d at 890-91. Also, the Florida Supreme Court noted that Nordion may have retained the right to use the license technology after the conclusion of the License Agreement. However, the patents expired simultaneously with the expiration of the License Agreement, and thus any such retention is inconsequential.
Having applied the factors set forth by the Supreme Court of Florida, we conclude that Nordion’s transfer to Best was an assignment, not a sublicense. Our previous opinion disposed of all of the arguments on appeal, save this certified question. Thus, the certified question was dispositive. Specifically, we held that Article 3.1 of the License Agreement was unambiguous but that Rad Source’s RS 3400 did not embody the licensed patents. Further, we held that Rad Source did not unreasonably refuse to consent to the proposed assignment to Best, and that Rad Source, while estopped from seeking damages even if Nordion committed the first breach, would be excused from its breach of the covenant not to compete if the Supreme Court of Florida held that the transfer was an assignment and thus was the first breach. Because we have applied the law as the Supreme Court of Florida defined it, and affirmed the district court’s finding that the transfer was an assignment, no issues are left undecided and we affirm the district court’s decision.
AFFIRMED.

. Nordion and Best are referred to in this opinion as Appellants.