## DOHERTY RESEARCH CO. v. VICKERS PETROLEUM CO.

No. 1242.

Circuit Court of Appeals, Tenth Circuit.

Jan. 6, 1936.

Rehearing Denied Feb. 12, 1936.

Dean S. Edmonds, of New York City (S. N. Hawkes, of Bartlesville, Okl., on the brief), for appellant.

William F. Hall, of Washington, D. C. (Joseph G. Carey, of Wichita, Kan., on the brief), for appellee.

Before PHILLIPS, McDERMOTT, and BRATTON, Circuit Judges.

BRATTON, Circuit Judge.

This is an appeal from a decree dismissing the bill in an ordinary patent infringement suit and the question for determination is whether plaintiff owned the title to the patent necessary to the right to maintain the action. Letters patent No. 1,260,584 issued to Cleveland Trust Company as assignee of Layton O. Sherman, the inventor, on March 26, 1918, covering a process for the distillation of crude petroleum. In addition to the defenses of invalidity and noninfringement, the defendant challenged the sufficiency of plaintiff's title to the patent to enable it to maintain the suit. The trial court heard that question in advance of the other issues; determined that plaintiff did not have the required title and dismissed the bill. Plaintiff appealed.

Ellis T. Crawford and plaintiff entered into a basic written contract dated May 8, 1926, but apparently executed on the 5th, in which it was recited that Cleveland Trust Company, Sherman Process Corporation, Layton O. Sherman and others owned certain interests in the patent in suit and two others; that a suit had been instituted and was pending in the United States Court in Illinois in which Percy N. Lawrence was plaintiff and Sherman was defendant; that the Doherty interests, consisting of Henry L. Doherty & Co., Cities Service Company, and certain named subsidiaries, were then engaged in refining crude petroleum by the so-called cracking

process; that plaintiff desired to obtain the legal title to the patents, a license under them and the right to sue for past and present infringement of them. The agreement obligated Crawford to acquire the outstanding interests in the patents and to effect a dismissal of the suit pending in Illinois within one year; to then assign to plaintiff by a separate deed of assignment the legal title to the patents together with the right to sue for past and present infringement; also to grant a license to plaintiff which would provide a royalty payment basis for the use of the process and which would absolve the plaintiff from liability for infringement through use of its Doherty process, all to be set forth in a separate license agreement. In return plaintiff was obligated to pay Crawford $12,000 in cash, a part of which was to be used in the acquisition of the outstanding interests in the patents and in addition to cause an appropriate action for infringement to be instituted at its expense in a proper tribunal within one year from the date of the contract and to prosecute it to a speedy determination within a reasonable time. It was to keep Crawford advised from time to time concerning the institution and prosecution of the action, to consult him respecting it and to give him the right to be represented in it. It was expressly provided that failure to institute such suit within the specified time and to prosecute it with due diligence to final conclusion would void the contract and ipso facto cause the rights granted plaintiff to revert to Crawford. It was further provided that neither of the parties would give, grant, license, or sell any of his or its rights under the patents to any person, corporation, or organization who or which it was known or believed had prima facie infringed them, or who should be designated by plaintiff as the parties to be sued for such infringement, and that no rights or sales should be made or acts permitted which would relieve the parties thus named as infringers from responsibility therefor. It then provided that although an assignment of the title would be granted, the recoveries obtained in the suits for infringement to be instituted in the name of plaintiff should be applied in the order of 75 per cent. thereof to the expenses of the litigation until they had been paid in full, but in no event to exceed $100,000, and the remainder paid to Crawford; and that Crawford should have the right to maintain at his own expense suits for past and future infringement against parties not sued by plaintiff within one year from the date of the agreement. Finally it was provided that if Crawford was unable to perform his part of the agreement within the fixed period of one year, either party should have the right to cancel the contract and in that event the money advanced to Crawford for the purpose of acquiring the interests in the patents should be refunded to plaintiff.

The license agreement referred to was executed on the same date. It granted the right to use the Sherman process disclosed by such patents for a royalty of 25 cents per barrel run of gasoline and that when such use began commercially $25,000 should be advanced in cash with provision that one-half of the royalty thereafter accruing should be retained and applied as reimbursement until the sum advanced had been absorbed. The grant was expressly confined to the Doherty Company and its subsidiaries and forbade them to grant licenses or permit others to use the process. Plaintiff was required to advise Crawford in advance the location and capacity of each plant at which the process was to be used, to submit monthly reports of the quantity of gasoline processed and to make monthly payment of the royalty in accordance with such reports. It then granted the Doherty Company and its subsidiaries immunity from liability for infringement of the Sherman process through use of the Doherty process. Crawford was accorded the privilege of canceling the license if the Doherty Company or its subsidiaries failed to make use of the process with requirement for payment of the royalty within two years, but provided that such cancellation should not affect the immunity for use of the Doherty process.

Crawford proceeded with promptness to perform his obligation under the contract. The parties stipulated in the court below that on May 18th he was the sole and exclusive owner of the entire right, title, and interest in the patent in suit. He executed the assignment on the following day. It recited that plaintiff desired to obtain the legal title to the patents, together with the right to sue for and recover in its own name damages and profits for past infringement. It then conveyed to plaintiff, its successors and assigns, "the legal title in and to said patents, inventions, processes, discoveries and improvements in the Methods of and Apparatus for Dis-

tilling Oil mentioned aforesaid, and in and to any reissue or reissues, extension or extensions of said Letters Patent together with the right to sue for and recover damages and profits in its own name, for any and all past infringements of said Letters Patent, to the full end of the terms for which the Letters Patent, any reissue or reissues or extension or extensions thereof are or may be granted as fully and entirely as the same would have been held and enjoyed by the said Ellis T. Crawford, had this assignment and sale not been made; * * *" It concluded with a provision that Crawford had not granted and would not grant any rights or interests which were inconsistent with those granted therein and that he would do all things necessary to enable plaintiff to carry the transfer into effect. On the same date the parties entered into a further agreement confirming and making the license effective. After referring to the "license agreement" and the assignment previously executed, it confirmed the license in this language: "Now, Therefore, in consideration of the premises, mutual covenants herein contained, and the sum of one dollar ($1.00) by each to the other paid, receipt of which is hereby acknowledged, it is agreed by and between the parties hereto that the License Agreement between Ellis T. Crawford and the Doherty Research Company dated May 5, 1926, shall be approved by the undersigned parties hereto and made effective as of the 19th day of May, 1926."

In the following July, plaintiff wrote Crawford listing the corporations against which suits for infringement were to be instituted. In October of that year, Crawford assigned all of his right, title, and interest in the patents to Gasoline Patents Corporation and on March 10, 1927, plaintiff wrote that corporation that it had been notified of such assignment. Reference was made in the letter to the original contract and to the letter to Crawford supplying the list of infringing corporations. It was then stated that plaintiff found it unnecessary to reserve the right to institute suits against all of the corporations formerly listed. A new list was furnished with request that no negotiations of an interfering nature be conducted, and it was stated that plaintiff would be glad to cooperate in effecting agreements of license with others.

Plaintiff relies upon the assignment for the requisite title to maintain the suit.

The assignment purports to assign and transfer without express condition the legal title to the patents, inventions, processes, discoveries, and improvements and plaintiff asserts that the nature and extent of its title must be measured by the terms of that instrument to the exclusion of the others. The several instruments were executed within a space of thirteen days. Their recitals disclose that they refer to a single transaction and that the parties regarded them in that manner. They are integral and interwoven parts of the whole; they constitute the successive steps taken in originating and consummating the transaction. It cannot be said that the assignment was a separate agreement, complete and exhaustive within itself to the exclusion of the other instruments, and that they merely provided collateral terms and conditions which were distinct from it. The several instruments bear the same significance in law as though their respective provisions were incorporated in a single writing and should be read together in determining the real intent and agreement of the parties. Littlefield v. Perry, 21 Wall. 205, 22 L.Ed. 577; Ormsby v. Connors (C.C.) 133 F. 548; Western Union Tel. Co. v. Louisville & N. R. Co. (C.C.A.) 238 F. 26; Empire Gas & Fuel Co. v. Stern (C.C.A.) 15 F.(2d) 323; Peterson v. Miller Rubber Co. (C.C.A.) 24 F.(2d) 59; Basile v. California Packing Corp. (C.C.A.) 25 F.(2d) 576; Layne-Bowler Chicago Co. v. City of Glenwood (C.C.A.) 34 F. (2d) 889; Skinner v. Skinner, 126 Kan. 601, 270 P. 594; Great Western Oil Co. v. Lewistown Oil & Refining Co., 91 Mont. 146, 6 P.(2d) 863; Symonds v. Sherman, 219 Cal. 249, 26 P.(2d) 293.

Construing the instruments together, it is perfectly clear that by one of them Crawford conveyed to plaintiff the legal title to the patent, invention, process, discovery, and improvement, together with the right to maintain suits for past and present infringement; that by another, which was confirmed after the conveyance, he granted plaintiff a license which authorized the Doherty Company and its subsidiaries to use the process and provided that the suits for infringement should be maintained in the name of plaintiff and at its own expense with provision that the sums recovered should be applied, first, 75 per cent. thereof to reimbursement for costs of the litigation, not to exceed $100,-000, and the balance to Crawford; that one suit should be instituted within one

year and prosecuted to a speedy conclusion; that Crawford should be advised and consulted with respect to all litigation brought under its terms and should have the right to be represented therein; that failure to thus institute the action within one year and to prosecute it with diligence should void the contract and cause all rights vested in the plaintiff to revert to Crawford. It was then expressly provided that the granted license was confined to the Doherty Company and its subsidiaries. Neither plaintiff nor the Doherty Company had the right to grant licenses to others or to otherwise permit them to use the process. That right remained in Crawford. It was further provided that failure to make use of the process with payment of the royalty within two years would empower Crawford to revoke the license, but such revocation should not affect the immunity from liability for infringement of the patent through use of the Doherty process and that default of sixty days in making the monthly payments of the royalty should likewise enable Crawford to revoke the license. Crawford subsequently transferred his rights in the patent to a third person, and plaintiff clearly recognized that he had possessed rights therein and had transferred them.

■ It is well settled that if the owner of a patent conveys to another the exclusive right to make, use, and vend the invention throughout the United States, or an undivided part in that exclusive right, or the exclusive right under the patent within a specified area in the United States, it is an assignment. A transfer of that kind vests in the assignee the interest which is requisite to the right to maintain a suit for infringement. In the first and third instances, he may maintain it in his own name and in the second he may maintain it jointly with the assignor. But a conveyance which fails to meet one of these requirements is a license and does not vest in the assignee the right to sue at law in his own name for infringement. That is the clear distinction between an assignment with the right and a license without it. Gayler v. Wilder, 10 How. 477, 13 L.Ed. 504; Moore v. Marsh, 7 Wall. 515, 19 L.Ed. 37; Waterman v. Mackenzie, 138 U.S. 252, 11 S.Ct. 334, 34 L.Ed. 923; Crown Die & Tool Co. v. Nye Tool & Machine Works, 261 U.S. 24, 43 S. Ct. 254, 67 L.Ed. 516; United States v. General Electric Co., 272 U.S. 476, 47 S.Ct. 192, 71 L.Ed. 362. The rights of a licensee for infringement must be enforced in the name of the owner of the patent or by the owner and the licensee together. Paper-Bag Machine Cases, 105 U.S. 766, 26 L.Ed. 959; Birdsell v. Shaliol, 112 U.S. 485, 5 S.Ct. 244, 28 L.Ed. 768. The reason for the rule is manifest. The monopoly granted by a patent is a single entity and it cannot be divided into several parts with different owners at the same place. That would permit a multiplicity of suits with the possibility of successive recoveries by different persons holding rights. The rights which passed to plaintiff in the single transaction before us—to use the process with payment of a royalty, but not to pass it to others by license or otherwise; and to sue for past and present infringement with requirement to reimburse itself for costs expended, not to exceed a specified sum, and to pay the remainder to Crawford—fall substantially short of the requisites of an assignment. They constitute a license which does not enable plaintiff to maintain an action for infringement in its own name without Crawford being a party.

■ There is a separate reason why plaintiff cannot now maintain the action in its name alone. The agreement confers upon plaintiff the right to institute suits for infringement and in equally clear terms it vests in Crawford the right to maintain such suits in his name against persons not sued by plaintiff within one year from the date of the contract and to retain all sums recovered. This action was filed more than one year after the agreement was executed. By the clear and unmistakable terms of the contract, plaintiff expressly consented that Crawford should have the right to maintain this action in his name and to retain all sums recovered in it. He has that right and unless precluded by the statute of limitations—a question which need not be explored here—he may now file an identical suit upon the alleged acts of infringement presented here. That would subject defendant to duplicate litigation and perhaps successive recoveries.

The decree is affirmed.